387 A.2d 689.

ROLAND BEAUVAIS AND SALLY BEAUVAIS *v.* NOTRE DAME
HOSPITAL AND CARLO DiSTEFANI.

JUNE 12, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

272

BEVILACQUA, C.J.   This is an appeal from a judgment in the Superior Court directing a verdict for defendant DiStefani.[1] The plaintiff Sally Beauvais brought this negligence action to recover for injuries allegedly sustained following an attempted administration of spinal anesthesia by the defendant.

---

[1] By agreement of the parties, a verdict was directed for Notre Dame Hospital shortly after commencement of the jury trial. The hospital, therefore, is not a party to this appeal.

The plaintiff Roland Beauvais joined the action to recover for medical payments made by him on behalf of his wife. Because the success of Mr. Beauvais' claim is dependent upon defendant's liability to his wife, we shall treat Mrs. Beauvais as the sole plaintiff for purposes of this opinion.

The plaintiff was admitted to Notre Dame Hospital on February 8, 1971. A tubal ligation was scheduled for the following morning. On the evening of February 8, defendant visited plaintiff for the purpose of assessing her as a candidate for spinal anesthesia. Evidence at trial indicated that during that visit, defendant ascertained that plaintiff was in good health and that she had received spinal anesthesia during a surgical procedure performed 9 years earlier with no ill effects.

During direct examination of defendant, plaintiff elicited testimony regarding several classical hazards associated with the administration of spinal anesthesia including paralysis, damage to intervertebral disc spaces, headaches, nausea, hypotension, inflammation of the spinal column, and inflammation of the arachnoid membrane.

The defendant admitted that he failed to discuss these risks with plaintiff but explained that he felt the discussion unnecessary because plaintiff was familiar with the procedure and because her medical history did not indicate that the procedure was inappropriate.

On February 9, prior to the scheduled surgery, defendant attempted to administer the anesthesia. The plaintiff testified that she felt some pressure and discomfort as defendant intradermally injected the first needle containing Novocain or procaine and then intramuscularly injected the second needle containing an antihypertensive and Novocain. An introducer through which the spinal is finally administered was then inserted. This hit bone rather than reaching the intradural space where the nerves are located. The plaintiff stated that she asked defendant to discontinue the procedure if he was having trouble. The defendant, however, redirected the

introducer and hit bone again. At this point, plaintiff felt "a sharp pain" up and down her back and in her legs. The defendant then abandoned the procedure in favor of a general anesthesia. The tubal ligation was conducted without further incident.

The plaintiff testified that after surgery she experienced back and leg pain. The pain continued after she was discharged from the hospital. Additionally plaintiff complained of numbness in both legs.

As a result of these complaints, plaintiff was hospitalized in May 1971. She was treated with heat packs and bed rest. A consulting neurosurgeon stated at that time that much of plaintiff's problem was "obscured by heavy emotional overlay."

In August 1971, a myelogram was performed to determine the cause of plaintiff's continuing pain. The attending physician and the consulting neurosurgeon testified that the myelogram showed an "equivocal defect" indicating some abnormality of a nerve root. The origin of the defect in this case could not be ascertained with reasonable medical certainty. However, the neurosurgeon testified that the defect could be indicative of a ruptured disc, a tumor, or a congenital defect. When asked whether the defect could be caused by introduction of a 3½ inch spinal needle, the neurosurgeon testified that this was a possibility.

On April 5, 1973, plaintiff filed the instant complaint. The case was tried before a jury. After completion of all evidence, defendant moved for a directed verdict. The trial justice reserved decision on the motion. When the jury returned "hopelessly deadlocked," the trial justice granted the motion without comment. The plaintiff filed a notice of appeal on December 20, 1975.

At the outset, we note that a formal judgment was not entered when ordered. Therefore, the appeal filed on December 20, 1975, which plaintiff is now prosecuting, is

from the oral decision of December 11, 1975 rather than from a written judgment. On April 27, 1976, this court remanded the case to the Superior Court for the entry of formal judgment. That judgment was entered on May 14, 1976. No appeal was taken at that time.

It is well settled that an appeal lies only from a final judgment. Such judgment must be set out in writing on a separate document. *East Providence Credit Union* v. *Brown*, 104 R.I. 92, 242 A.2d 428 (1968). This procedural defect would ordinarily be fatal. However, the litigation in this case has been protracted. Additionally, it is clear that the decision of December 11, 1975 was intended by the trial justice to be his final act in this case. Therefore, in the interests of justice and to prevent hardship, we will treat plaintiff's appeal of December 20 as if it had been timely filed after entry of the May 14 judgment. *Lowe* v. *Senior*, 385 P.2d 942 (Alas. 1963), *DiTommasi* v. *DiTommasi*, 27 Md. App. 241, 340 A.2d 341 (1975); *See Malinou* v. *Kiernan*, 105 R.I. 299, 251 A.2d 530 (1969). Thus, the case is properly before us and we will consider the merits of plaintiff's appeal.

We do not address the propriety of the directed verdict insofar is it relates to the question of defendant's negligence in performing the anesthestic procedure because this issue was neither briefed nor argued. *Salk* v. *Alpine Ski Shop, Inc.*, 115 R.I. 309, 342 A.2d 622 (1975).

The plaintiff rests her appeal solely upon her claim that the evidence introduced at trial on the issue of defendant's failure to disclose the risks accompanying the administration of spinal anesthesia was sufficient to warrant denial of defendant's motion for a directed verdict.

This court in *Wilkinson* v. *Vesey*, 110 R.I. 606, 295 A.2d 676 (1972), set out the plaintiff's burden of proof in an action based upon the failure of a physician to disclose the risks inherent in any medical procedure. We stated in *Wilkinson* that the patient has the "right to be the final judge to do with his body as he wills." 110 R.I. at 625, 295 A.2d at 688.

Therefore, we held that a physician has a duty to disclose all the known material risks peculiar to a proposed procedure unless those risks are likely to be known to the average patient or are, in fact, known to the particular patient. 110 R.I. at 627, 295 A.2d at 689. The plaintiff must produce evidence that the physician breached this duty and that this breach was the proximate cause of plaintiff's injury; that is, that the undisclosed material risk did in fact occur and that plaintiff would not have undergone the procedure if advised of that risk. 110 R.I. at 628-29, 295 A.2d at 690.

This court on review, like the trial court in the first instance, when considering the propriety of a directed verdict, must consider the evidence presented at trial, including reasonable inferences to be drawn therefrom, in the light most favorable to the party against whom the motion is made, without weighing the evidence or considering the credibility of the witnesses. *Evans* v. *Liguori,* 118 R.I. 389, 394, 374 A.2d 774, 776 (1977). Only where the evidence is insufficient at law to support a verdict in the opposing party's favor may the court direct a verdict. *Hone* v. *Lakeside Swimming Pool & Supply Co.,* 114 R.I. 394, 396, 333 A.2d 430, 431 (1975). Additionally, in this case, we must review the reserved decision on the motion as though it was given at the time the motion was made and the case never submitted to the jury. *Renault* v. *John Hancock Mutual Life Insurance Co.,* 98 R.I. 213, 220, 200 A.2d 588, 591 (1964).

In the case at bar, the record is devoid of probative evidence which, if believed, would support plaintiff's claim. While it is clear that defendant failed to disclose the classic hazards of spinal anesthesia, no evidence regarding the severity or likelihood of those risks was presented so that a jury could determine the materiality of those risks to a reasonable person in plaintiff's position. *See Wilkinson* v. *Vesey,* 110 R.I. at 627-28, 295 A.2d at 689.

Additionally, evidence presented on the issue of proximate cause was not sufficient to warrant a finding that defendant's

breach caused plaintiff's injuries. It is well settled in this state that when the only evidence offered to establish a causal relationship between one person's activities and another's injuries is the testimony of a medical expert, such evidence must speak in terms of probabilities rather than possibilities. *Sweet* v. *Hemingway Transport, Inc.*, 114 R.I. 348, 355, 333 A.2d 411, 415 (1975). While the neurosurgeon who examined plaintiff did testify that introduction of a 3½ inch spinal needle was a possible cause of plaintiff's injury, no evidence was presented that a 3½ inch needle was in fact used by defendant. Nor was evidence presented which would establish that, in this case, the nerve defect was more probably caused by the use of a spinal needle rather than by a ruptured disc or by a tumor.

Most importantly, plaintiff in this case presented no evidence that she would have declined spinal anesthesia had she been advised that nerve damage might result. *See Wilkinson* v. *Vesey*, 110 R.I. at 628-29, 295 A.2d at 690.

For the foregoing reasons, we hold that the trial court properly directed a verdict for the defendant in this case. Therefore, we do not address the defendant's claim that, because the plaintiff failed to amend her complaint to include a count alleging failure to disclose the risks of anesthesia, the issue of informed consent was not properly before the court.

The plaintiff's appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.

*John F. McBurney, Matthew J. Zito,* for plaintiffs.

*Hanson, Curran & Parks, Kirk Hanson, David P. Whitman,* for defendant Carlo DiStefani.